**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| CARLOS MARTINEZ | § | |
|       Plaintiff | § | |
| | § | |
| v. | § | Case No. |
| | § | |
| CITY OF CORINTH POLICE | § | |
| DEPARTMENT, | § | |
| JAMES HULSE, RASHAAN DOUGLAS | § | |
| and HERSHALL REYNOLDS | § | |
|       Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATE DISTRICT COURT:

Plaintiff files this complaint and for cause of action and will show the following:

### I.      PARTIES

1.1    Plaintiff, Carlos Martinez ("Mr. Martinez") is a natural person who resides and did reside, was domiciled in, and was a citizen of Texas at all relevant times.

1.2    Defendant, City of Corinth Police Department ("Corinth") is a Texas incorporated municipality and may be served through clerk of said municipality at 3501 FM 2181 Unit A, Corinth, Texas 76210. Corinth acted or failed to act at all relevant times, in accordance with its customs, practices and/or policies, through its policymakers, chief policymakers, employees, agents, representatives, and/or police officers and is liable for such actions and/or failure to act to the extent allowed by law (including but not necessarily limited to law applicable to claims pursuant to 42 U.S.C. § 1983.

1.3    Defendant, James Hulse, ("Hulse" or "Officer Hulse"), is a natural person who resides and was domiciled in Texas and may be served at his place of employment, Corinth Police Department, 3501 FM 2181 Unit A, Corinth, Texas 76210. Officer Hulse is being

ORIGINAL COMPLAINT

sued in his individual capacity, and he acted at all relevant times under color of state law. Officer Hulse was employed by and/or was the agent and/or designee and/or contractor of and for the City of Corinth ("Corinth") at all such times and acted or failed to act in the course and scope of his duties for Corinth.

1.3    Defendant, Rashaan Douglas, ("Douglas" or "Officer Douglas"), is a natural person who resides and was domiciled in Texas and may be served at his place of employment, Corinth Police Department, 3501 FM 2181 Unit A, Corinth, Texas 76210. Officer Douglas is being sued in his individual capacity, and he acted at all relevant times under color of state law. Officer Douglas was employed by and/or was the agent and/or designee and/or contractor of and for Corinth at all such times and acted or failed to act in the course and scope of his duties for Corinth.

1.4    Defendant, Hershall Reynolds, ("Reynolds" or "Officer Reynolds"), is a natural person who resides and was domiciled in Texas and may be served at his place of employment, Corinth Police Department, 3501 FM 2181 Unit A, Corinth, Texas 76210. Officer Reynolds is being sued in his individual capacity, and he acted at all relevant times under color of state law. Officer Reynolds was employed by and/or was the agent and/or designee and/or contractor of and for Corinth at all such times and acted or failed to act in the course and scope of his duties for Corinth.

## II.    JURISDICTION

2.1    The court has original subject matter jurisdiction over this lawsuit according to 28 U.S.C. §§ 1331 and 1343(4) because this suit presents a federal question and seeks relief pursuant to federal statutes providing for the protection of civil rights. This suit arises

ORIGINAL COMPLAINT

under the United States Constitution and a federal statute including but not necessarily

limited to 28 U.S.C § 1983.

2.2     This Court has personal jurisdiction over Defendants because they reside in, are

domiciled in, and are citizens of Texas.

### III.     VENUE

3.1     Venue is proper in the Sherman Division of the U.S. District Court for the Eastern

District of Texas pursuant to 28 U.S.C § 1391(b)(2) because it is the division in the

district in which a substantial part of the events or omissions giving rise to claims

asserted in this pleading occurred.

### IV.     CONDITIONS PRECEDENT

4.1     All conditions precedent to Plaintiff's claim for relief have been performed or have

occurred.

### V.     FACTUAL ALLEGATIONS

**A.     Introduction**

5.1     Plaintiff provides the factual allegations sections below the general substance of certain

factual allegations. Plaintiff does not intend that those sections provide in detail, or

necessarily in chronological order, any or all allegations. Rather, Plaintiff intends that

those sections provide Defendants sufficient fair notice of the general nature and

substance of Plaintiff's allegations, and further demonstrate that Plaintiff's claim(s) have

facial plausibility. Whenever Plaintiff pleads allegations "upon information and belief,"

Plaintiff is pleading that the specified factual contentions have evidentiary support or will

likely have evidentiary support after a reasonable opportunity for further investigation or

ORIGINAL COMPLAINT

discovery.

**B.      Carlos Martinez**

5.2     Mr. Martinez lives and works in the Denton County area and is the holder of a

commercial driver's license ("CDL"). Mr. Martinez concedes that he was lawfully

stopped for the Class C misdemeanor offense of speeding on this night of the incident in

which Defendants chose to assault him and have him wrongfully prosecuted for resisting

arrest.

**C.      The Assault and Arrest of Mr. Martinez**

5.3     On February 21, 2019, Mr. Martinez was operating his BMB 525 sedan at or around the

6500 block of Interstate 35 E in the City of Corinth in Denton County, Texas.

5.4     At or around 9:00 p.m that evening, Mr. Martinez was stopped by Officer Hulse for

speeding.

5.5     Mr. Martinez immediately pulled over when Office Hulse activated his emergency lights.

Additionally, Mr. Martinez activate the emergency flashers on his own vehicle and

immediately rolled down the window to communicate with Officer Hulse

5.6     Mr. Martinez presented his driver's license to Officer Hulse for identification. The

license presented by Mr. Martinez indicated that it was a commercial driver's license

recently issued by the Texas Department of Public Safety.

5.7     Upon checking Mr. Martinez's information, it was revealed that an individual who was

also known as "Carlos Martinez" had a homicide warrant out of the Clarke County

Sheriff's Office in Georgia.

5.8     Officer Hulse made no effort to confirm the warrant or otherwise make any attempt to

ascertain whether the "Carlos Martinez" he had stopped was the same individual as the

ORIGINAL COMPLAINT

"Carlos Martinez" wanted in Clarke County, Georgia.

5.9     Upon receiving this information, Office Hulse order Mr. Martinez to remove the keys from the ignition of his vehicle with his left hand, to place both of his hands out the window, and to throw the vehicle keys out the window. Mr. Martinez complied with Officer Hulse's orders.

5.10    Officer Douglas arrived on the scene approximately one minute later and brandished an AR-15 or similar rifle toward Mr. Martinez, who was still waiting with his hands out the window.

5.11    In a loud voice, Officer Douglas commanded Mr. Martinez: "Driver, keep your hands right where you're at. Do you understand?"

5.12    Officer Douglas then commanded Mr. Martinez: "With your right hand, without putting your left hand back in the car, open the car door". Mr. Martinez immediately attempted to comply with Officer Douglas's commands, but the car door did not open.

5.13    After it was clear that the car door would not open, Mr. Martinez continued to keep both of his hands outside of the vehicle as instructed. Officer Douglas repeated his command to Mr. Martinez to unlock the car door.

5.14    Office Hulse and Officer Douglas moved to positions at which they could more clearly see Mr. Martinez, including a full view of his face. They repeated their commands to Mr. Martinez to unlock the car door.

5.15    Mr. Martinez tried to explain to Officers Hulse and Douglas why the door would not open. Officer Douglas interrupted saying "I don't care, do you understand" and "don't move . . . do you understand what I'm telling you".

5.16    Officer Hulse again told Mr. Martinez to open the car door with his right hand. Mr.

ORIGINAL COMPLAINT

Martinez responded by explaining to Officer Hulse that the unlock button was in the middle of the center console area of his vehicle. He then obeyed Officer Hulse's command, attempting a second time to open the door as instructed by the officers. The door did not open.

5.17 After seeing that the door would not open, Officer Hulse again commanded Mr. Martinez to open the driver side door – this time with his left hand. As Mr. Martinez tried to open the door again, Officer Douglas interrupted and said "My friend, you're not listening"

5.15 Mr. Martinez continued to explain to the officers that the car was a BMW and that the way to open the door was to activate a button in the center console. He then said "I can get out of the window" and Officer Douglas ordered Mr. Martinez to come out the window (4:50).

5.16 As Mr. Martinez moved slightly to exit through the window, he was immediately approached by all three Defendant (Officer Reynolds had arrived at some time shortly after Officer Douglas). They grabbed Mr. Martinez and started trying to physically pull him out of the window.

5.17 At the officers pulled Mr. Martinez through the window, Officer Douglas continued brandishing his rifle and yelling "get the fuck out of the goddamn car…get out of the fucking car man". As he was being pulled through the window, Officer Douglas began striking Mr. Martinez with his knee.

5.18 Mr. Martinez was commanded to release his legs as he tried to comply with the instructions of the officers. English is Mr. Martinez's second language and he used his best efforts to comply with Defendants' commands despite ongoing screaming, being struck, and having firearms pointed at him.

ORIGINAL COMPLAINT

5.19    Approximately thirty seconds after Officer Douglas first directed Mr. Martinez to come
        exit the vehicle through the window, Officer Reynolds deployed his taser on Mr.
        Martinez.

5.20    The taser was deployed at a time when Mr. Martinez was not a threat to the officers and
        was under the physical control of other officers.

5.21    As Mr. Martinez began screaming due to the incredibly painful effect of the taser, Officer
        Douglas continued telling him to release his legs and can be heard to say "he's
        bullshitting"

5.22    As Mr. Martinez is pulled from the vehicle, Officer Douglas continues to yell at Mr.
        Martinez to "get on the ground" – even though Mr. Martinez was clearly on the ground
        and being handcuffed by the other two Defendants. Without physically resisting, Mr.
        Martinez verbally stated to officers that he did not have tattoos.

**D.    Aftermath of the Assault**

5.22    Only after Mr. Martinez had been physically assaulted, tased, and handcuffed by the
        officers did Officer Reynolds ask Officer Douglas to obtain positive identification of Mr.
        Martinez.

5.23    Officer Douglas obtained positive identification of Mr. Martinez by entering Officer
        Hulse's police cruiser and retrieving Mr. Martinez's driver's license. Officer Reynolds
        can be heard saying "it may not be him" as Officer Douglas asks for dispatch to send the
        warrant to Officer Hulse's screen.

5.24    Dispatch responds to Office Douglas' inquiry stating that Mr. Martinez matched by name
        and date of birth with a subject of Georgia.

ORIGINAL COMPLAINT

5.25    Officer Douglas asked if Officer Hulse has run Mr. Martinez "complete" which, on information and belief, was an inquiry as to whether Officer Hulse had positively confirmed whether Mr. Martinez and the wanted subject from Georgia were one and the same person prior to initiating a felony traffic stop. Dispatch responded stating that the identity of the subject should have been confirmed through tattoos.

5.26    Officer Douglas obtained confirmation of the location of tattoos on the subject with the warrant and a description of the tattoos from dispatch. He also provided Mr. Martinez's drivers license number to dispatch and asked them to run it "complete".

5.27    Shortly after obtaining a description of the tattoos from the subject wanted in Georgia, Officer Douglas approached Mr. Martinez and directed Officer Hulse to sit him up so that he could breathe. After looking at Mr. Martinez for tattoos and finding none, Officer Douglas admitted to Officer Reynolds that he did not believe Mr. Martinez was the same individual wanted in Georgia.

5.28    Officer Reynolds responded to Officer Douglsa by saying "it may not be, but he is still going to jail for resisting."

5.29    Officer Douglas proceeds to inform Officer Reynolds that Mr. Martinez did not have tattoos matching the warrant, to which Officer Reynolds responds by stating "that's fine, we'll put him in jail for whatever stop Hulse had plus the resisting"

5.30    Shortly after this conversation, Defendants informed Mr. Martinez that he was under arrest for resisting arrest and transported him to the Denton County Jail.

## VI.    CAUSES OF ACTION

6.1    Plaintiff incorporates paragraphs 1.1 – 5.30 above into each cause of action below by reference.

ORIGINAL COMPLAINT

## FIRST CLAIM FOR RELIEF

**Cause of Action Under 42 U.S.C § 1983 for Violation of 4th Amendment Rights: Excessive Force and Improper Seizure; False Arrest, Malicious Prosecution, and Due Process Violations**

6.2     Defendants are liable to Mr. Martinez, pursuant to 42 U.S.C. § 1983, for violating Mr. Martinez's rights guaranteed by the Fourth Amendment, as incorporated and applied to the States pursuant to the Fourteenth Amendment, as a result of use of excessive force and improper seizure of Mr. Martinez.

6.3     Defendants acted and failed to act under color of state law at all times referenced in this pleading.

6.4     Defendants were deliberately indifferent to Defendant's constitutional rights and acted in an objectively unreasonable manner when seizing and using force with Mr. Martinez.

6.5     Defendants exercised constitutionally impermissible excessive force and seizure.

6.6     Defendants violated clearly established constitutional rights and their conduct was objectively unreasonable in light of clearly established law at the time of the relevant incident.

6.7     First and foremost, it was objectively unreasonable for Officers Hulse and Douglas to initiate a felony traffic stop on Mr. Martinez prior to ascertaining that the individual wanted for homicide in Georgia was one and the same person as the individual they had stopped.

6.8     The actions taken by Officer Douglas in the aftermath of the assault and arrest of Mr. Martinez demonstrates that objectively dangerous and potentially fatal consequences of Officer Hulse's failure to properly confirm the warrant.

6.9     Second, it was clearly established law, in the Fifth Circuit, at the time Defendants chose

ORIGINAL COMPLAINT

to assault and tase Mr. Martinez that, while use of a Taser can be appropriate when a subject consciously and deliberately continues to resist arrest, or consciously and deliberately continues to resist being handcuffed (particularly when it is not the first method to gain compliance), Tasing is not appropriate, and therefore patently unreasonable, if it is either unclear that the person is resisting, or (as in the this case) a person is not resisting at all.

6.10   The body camera footage of Officer Douglas demonstrates that Mr. Martinez continuously made good faith attempts to comply with Defendants' orders. It also demonstrates that Defendants knew, or should have known, that English was likely not Mr. Martinez's first language. As he tried complying with the command of Officer Douglas to exit his vehicle through the window, Mr. Martinez was immediately rushed, grabbed, and stuck by the officers. He was then tased approximately thirty seconds after being rushed by the officers, who continued commanding him to stop resisting even as he was being actively tased.

6.11   In the matter of the physical attack it was, at the time, clearly established law in the Fifth Circuit that a law enforcement officer's use of force is excessive when an officer strikes, punches, or violently slams a suspect who is not resisting arrest. However, in addition to using a Taser, Officer Douglas repeatedly struck Mr. Martinez with his knee.

6.12   It was clearly established law at the time that Defendants tased and physically struck Mr. Martinez that such actions should not have occurred if Defendant was (a) not accused of a serious crime; (b) was not an immediate threat to the safety of law enforcement officers or others; and (c) was not actively resisting arrest or attempting to evade arrest by flight. In this case, not of the above criteria could reasonably have been applied to Mr. Martinez.

ORIGINAL COMPLAINT

If Officer Hulse had bothered to confirm Mr. Martinez's identity through appropriate means, there would have been no need to physically remove him from the vehicle.

6.13   Furthermore, it was clearly established precedent in the Fifth Circuit that, even if all three of these elements were not met, Tasing could be patently unreasonable. Mr. Martinez was not guilty of any offense other than speeding. He was clearly unarmed, attempting to comply with instructions from the officers, and not a threat to the Defendants or to others. Finally, he was not actively resisting arrest or attempting to evade arrest. At most, he was confused about seemingly nonsensical instructions from the officers and scared at having several weapons – including an AR-15 rifle – pointed directly at him. If the actions or inactions of Mr. Martinez demonstrate anything, they are those of a man who was terrified of being held at gunpoint by several officers for an offense that he did not commit.

6.14   Defendants' use of force was clearly unreasonable, unconstitutional, and against clearly established law. The resisting arrest charge against Mr. Martinez was dismissed by the Denton County District Attorney.  There were no exigent circumstances allowing Defendants to use the force they chose to use against Mr. Martinez – at least without first confirming his identity. He was not resisting arrest, was not trying to leave the scene of the stop, and presented no threat of harm to anyone. Therefore, Defendants are not entitled to qualified immunity.

6.16   It was further established in the Fifth Circuit, at the time Mr. Martinez was assaulted, that a police officer who is a bystander can be held liable pursuant to 42 U.S.C § 1983 under the theory of bystander liability. That theory of liability applies when the bystander officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2)

has a reasonable opportunity to prevent the harm; and (3) chooses not to act. Although each of the officers did not commit every one of the acts described in this pleading, their actions and inactions nevertheless meet all three elements and negate qualified immunity.

6.15    Mr. Martinez seeks all remedies and damages available to him under 42 U.S.C. § 1983. The damages suffered by Mr. Martinez were caused and/or proximately caused by Defendants, or in the alternative, Defendants were a producing cause of Mr. Martinez's damages. Therefore, Mr. Martinez seeks all legally-available damages including, but not necessarily limited to: (a) past physical pain; (b) any future physical pain; (c) past mental anguish; (d) future mental anguish; (e) medical and healthcare expenses incurred (paid plus owed) in the past; (f) any medical and healthcare expenses that in reasonable probability will be incurred in the future; (g) past disfigurement; (h) any future disfigurement; and (i) exemplary/punitive damages.

6.16    Exemplary/punitive damages are appropriate in this case to deter and punish clear and unabashed violations of Mr. Martinez's constitutional rights. Defendants actions and inactions showed a reckless or callous disregard of, or indifference to, Mr. Martinez's rights. Defendants knew that there was a substantial risk of injury or harm when they chose to take the actions described in this pleading, but they nevertheless proceeded with conscious indifference to his rights, welfare, and safety. Moreover, Mr. Martinez seeks reasonable and necessary attorney fees pursuant to 42 U.S.C §§ 1983 and 1988.

## VII.    PRAYER

7.1    For these reasons, Plaintiff that Defendants be summoned to appear and answer, and that Plaintiff have judgment for damages within the jurisdictional limits of the court and against Defendants, jointly and severally, as legally applicable for:

ORIGINAL COMPLAINT

(a) past physical pain;

(b) any future physical pain;

(c) past mental anguish;

(d) future mental anguish;

(e) medical and healthcare expenses incurred (paid plus owed) in the past;

(f) any medical and healthcare expenses that in reasonable probability will be incurred in the future;

(g) past disfigurement; and

(h) any future disfigurement;

(i) exemplary/punitive damages;

(j) reasonable and necessary attorneys' fees through trial and any appeals and other appellate proceedings pursuant to 28 U.S.C §§ 1983 and 1988;

(k) court costs and all other recoverable costs;

(l) pre-judgment and post-judgment interest at the highest allowable rates; and

(m) all other relief, legal and equitable, general and special, to which Plaintiff is entitled.

Respectfully submitted,

Marsala Law Group
1417 E. McKinney St.
Suite 110
Denton, TX 76209
(940) 382-1976
(469) 939-8860 fax
marsalalawgroup@gmail.com

/s/ Dominick J. Marsala
Dominick J. Marsala
SBN: 24054063

ORIGINAL COMPLAINT