IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CARLOS MARTINEZ           Plaintiff | § § § | |
| v. | § § | Case No. 4:21-cv-00146-ALM |
| CITY OF CORINTH POLICE DEPARTMENT, JAMES HULSE, RASHAAN DOUGLAS, AND HERSHALL REYNOLDS           Defendants. | § § § § § § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTIONS TO DISMISS PLAINTIFF'S CLAIMS**

Plaintiff files his Response in Opposition to the various motions to dismiss (ECF 15, 16, 17, and 18) filed by Defendants and would respectfully show this Honorable Court at follows:

**SUMMARY OF OPPOSITION**

First and foremost, Plaintiff has timely amended his complaint as allowed by Rule 15(a)(1)(B). While many courts consider pending 12(b)(6) motions to be moot based when a party timely amends under this rule. However, the local rules of practice in this Court specifically require a response to such a motion within fourteen days. See L.R. CV-7(e). Furthermore, other circuits have recently ruled that the filing of an amended complaint does not necessarily render a 12(b)(6) motion moot. See e.g. *Pettaway v. National Recovery Solutions*, No. 19-1453 (2d Cir. Apr. 9, 2020). Therefore, Plaintiff files this response to Defendants' motions.

Dismissal of Martinez's claims against Defendants is improper because he adequately plead his excessive force claims against all the officers employed by the City of Corinth Police Department.. Specifically, Martinez alleges in his complaint that he was physically assaulted by

the defendant officers during a felony traffic stop which was initiated based upon a case of mistaken identity. But for the wanton acts of misconduct by the responding officers in failing to properly confirm an out-of-state homicide warrant, Martinez should have only been stopped to investigate a misdemeanor traffic offense. Not only was Martinez assaulted by the three officers, he was illegally seized and wrongfully placed under arrest. There was only probable cause to believe that Martinez had committed a traffic offense. Martinez made no threatening gestures toward the officers, did not attempt to flee, and made every effort to comply with the contradictory instructions given to him while one of the officers (Douglas) was brandishing an AR-15 style rifle in his direction.

 Despite making every effort to comply with their commands, the officers used excessive force during their wrongful arrest of Martinez and caused him to suffer severe pain from his injuries. Thus, Martinez alleges that the acts of officers (employees of the Corinth Police Department) in pulling him from the driver-side window of his vehicle, punching him, throwing him to the ground, and tasing him was unconstitutional and excessive for a non-resisting suspect such as Martinez. Thus, Martinez has alleged a plausible civil rights claim against the defendants.

 Alternatively, in the even the Court finds that Plaintiff failed to adequately allege his claim against defendants, dismissal would remain improper because justice requires that Plaintiff be given the opportunity to amend his pleadings and address any deficiencies (to the extent that they have not already been addressed by his amended filing). Fed. R. Civ. P. 15(a)(2). Plaintiff respectfully requests such an opportunity if necessary.

## ALLEGATIONS REGARDING USE OF EXCESSIVE FORCE

In his Original Complaint, Martinez alleges the following facts in support of his excessive force claim against the Defendants1:

On or around February 21, 2019 at approximately 9:00 p.m., at or around the 6500 block of Interstate 35 E in the City of Corinth in Denton County, Texas, Corinth Police Officer James Hulse ("Hulse") lawfully stopped Martinez for the Class C misdemeanor offense of speeding. ECF 1, ¶ 5.3 – 5.4. Martinez immediately pulled over when Hulse activated his emergency lights, utilized his own emergency flashers for additional safety, rolled down his window, and produced his commercial driver's license to Hulse as identification. *Id*. at 5.5 – 5.6.

Upon checking Martinez's information, Hulse learned that an individual named "Carlos Martinez" had a homicide warrant out of the Clark County Sheriff's Office in Georgia. *Id*. at ¶ 5.8. Without confirming the warrant or making any other effort to ensure that Plaintiff was the same "Carlos Martinez" wanted in Georgia, Hulse ordered Martinez to remove the keys from the ignition of the vehicle, place both of his hands out of the window, and throw his keys out of the window. *Id*. at ¶ 5.9. Martinez complied with Hulse's commands and, approximately one minute later, Douglas arrived on the scene and began giving Martinez loud commands while brandishing an AR-15 style rifle in his direction. *Id*. at ¶ 5.10.

Douglas repeatedly gave Martinez commands to open the door of his vehicle while keeping both of his hands outside of the vehicle and Martinez repeatedly attempted to obey Douglas' commands and open the door of his vehicle. *Id*. at 5.11 – 5.16. Martinez attempted to explain to Douglas that the button to unlock the door to the vehicle was located on the center console as Douglas continued approaching the vehicle with his rifle and interrupting Martinez's

---

1 It should be noted that the citations contained in this motion are to Martinez's original complaint, not his amended complaint.

reasonable attempts to explain why the door would not open. *Id*. Finally, Martinez offered to climb out the window and Douglas ordered him to do so. *Id.* As Martinez began attempting to climb out of the driver side window from the driver seat while still keeping his hands in plain view of the officers, all three of the officers present grabbed Plaintiff and started physically pulling him from the vehicle. *Id*.

While pulling Plaintiff – who had complied with the instructions of officers in all respects – from the window, Douglas began striking Martinez with his knee as he repeatedly said "get the fuck out of the goddamn car . . . get out of the fucking car man". *Id*. at ¶ 5.17. For his part, Martinez continued to use his best efforts to exit the vehicle despite being screamed at, physically assaulted, and having weapons pointed at him. *Id.* at ¶ 5.18. Officer Hershall Reynolds ("Reynolds") deployed a taser on Plaintiff despite the fact that he was not actually resisting, was not a threat to officers, and was under the physical control of Officers Douglas and Hulse. Id. at ¶ 5.19 – 5.20. He then thrown to the ground and handcuffed by the officers. *Id*. 5.22. Only after physically assaulting, tasing, and handcuffing Martinez did the three officers involved deem it prudent to confirm the supposed homicide warrant from Georgia. *Id*. at ¶ 5.22 – 5.27. After determining that Martinez was not the same "Carlos Martinez" wanted in Georgia (and despite the fact that he had not actively resisted) the officers decided to arrest him anyway for the Class A misdemeanor offense of resisting arrest. *Id*. at 5.28 – 5.30.

## ARGUMENT & AUTHORITIES

A.   **Rule 12(b)(6) Standard**

To defeat a motion to dismiss filed under FRCP 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). A

claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). This pleading standard requires "more than a sheer possibility that defendant has acted unlawfully," but it is "not akin to a 'probability requirement." *Id.* Although a plaintiff is required to plead more than a "formulaic recitation of the elements", he is not obligated to advance "detailed factual allegations" to adequately state a claim under the federal rules. *Twombly*, 550 U.S. at 555 (citation omitted). The pleading need only demonstrate a right to relief "above the speculative level." *Id*. So long as the allegations permit the trial court "to infer more than the mere possibility of wrongdoing," dismissal under Rule 12(b)(6) is inappropriate. *Iqbal*, 556 U.S. at 679.

When considering a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto Ins. Co*., 509 F.3d 673, 675 (5th Cir. 2007). The court does not evaluate a plaintiff's likelihood of success; it only determines whether the plaintiff has a legally cognizable claim. *United States ex. rel. Riley v. St. Luke's Episcopal Hosp*., 355 F.3d 370, 376 (5th Cir. 2004). Accordingly, the only question presented to a court on a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002).

Finally, it should be noted that motions to dismiss under Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011); *Lormand v. U.S. Unwired, Inc*. 565 F.3d 228, 231 (5th Cir. 2009). The Fifth Circuit has long held that a "strong framework of policy considerations . . . mitigate[s] against granting motions to dismiss for failure to state a claim." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc*.

677 F.2d 1045, 1050 (5th Cir. 1982). None of the defendants, in their motions to dismiss, have met the herculean task of demonstrating their entitlement to a dismissal under Rule 12(b)(6) and their motions should be denied.

## B. The Qualified Immunity Standard

Contrary to the assertions contained in various defense motions, Martinez's primary claims do not relate to Martinez being ordered to exit his vehicle; they relate to the officers' use of excessive force against a compliant and non-resisting suspect, and the subsequent and wrongful arrest of a suspect for resisting arrest who was not, in fact, resisting. Defendants argue that they are entitled to qualified immunity with respect to their actions against Martinez. However, the doctrine of qualified immunity operates to protect "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In analyzing the officers' entitlement to qualified immunity, a court makes a two-pronged analysis. First, courts ask whether the facts alleged, taken in the light most favorable to the party asserting the inquiry, show that the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If such a constitutional violation is found, courts then determine whether the right was "clearly established" as the time. *Id*. Although it is often appropriate to answer these two questions sequentially, courts are vested with "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Id*. In performing such an analysis, this Court must view the allegations in the light most favorable to Plaintiff to determine whether his complaint states a valid claim. *Great Plains Trust*, 313 F.3d at 312; see also *Rich v.*

*Palko*, 920 F.3d 288, 294 (5th Cir. 2019); *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (discussing the considerations of a qualified immunity claim and the prongs of the court's analysis).

C. **The use of excessive force on Plaintiff when he was compliant with officers' instruction and not resisting arrest was objectively unreasonable.**

The first prong of the qualified immunity analysis determines "whether a constitutional right would have been violated on the facts alleged." *Saucier*, 533 U.S. at 200. If a law enforcement officer uses excessive force when making an arrest, the Fourth Amendment guarantee against unreasonable seizure is implicated. *King v. Chide*, 975 F.2d 653, 656 (5th Cir. 1992); see also *Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that all claims of excessive forces – deadly or not – while making an arrest, investigatory stop, or seizure of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard).

To adequately plead an excessive force claim, a plaintiff must allege facts sufficient to determine: "(1) injury; (2) which resulted directly and only from a use of force that was clearly excessive; and (3) the excessiveness of which was clearly unreasonable." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007). An officer violates the Fourth Amendment when an arrestee "suffers injury that results directly and only from a clearly excessive and objectively unreasonable use of force." *Joseph ex. rel. Estate of Joseph Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020); see also *Graham v. Connor*, 490 U.S. 386, 395 (1989). At this pleading stage, the sole inquiry is whether Martinez has pleaded facts that allow the court "to draw the reasonable inference that [the officers are] liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citations omitted).

There is no legitimate dispute that Martinez has alleged specific facts showing an injury. Specifically, Martinez has alleged that he was violently dragged through the driver side window

of his vehicle, struck several times by Douglas with his knee, tased by Reynolds, and thrown to the ground. There is also no legitimate dispute that these injuries were the direct consequence of the use of excessive force by the responding officers. Furthermore, Martinez was arrested for the Class A misdemeanor offense of resisting arrest although there was no probable cause or legal basis to do so. Although Martinez was lawfully stopped for a Class C misdemeanor speeding offense, this was not the reason he was arrested. He offered no resistance to officers and repeatedly made good faith attempts to comply with their instructions to open the door of his vehicle so he could exit as ordered. He even tried explaining to officers that the only reason he was unable to do so is because he had been ordered to keep both of his hands in clear view outside the window to the vehicle, and the button to unlock the driver side door to his vehicle was located on the center console. Thus, the sole question is whether Martinez has alleged facts that, if true, allow the Court to draw a reasonable inference that the officers' conduct was objectively unreasonable. *Id*.

**D.    It was clearly established at the time of the incident that striking, tasing, and throwing a non-resisting suspect to the ground is excessive force in violation of the Fourth Amendment.**

In this case, Martinez has alleged sufficient facts to give rise to a plausible claim that the actions of the officers in pulling Martinez from the window of his vehicle, repeatedly striking him, tasing him, and throwing him to the ground were objectively unreasonable under the circumstances and that his injuries were caused by such use of force. A "significant injury" is not required for Martinez to establish an excessive force claim. *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005). Furthermore, Martinez's injuries of bruising when he was struck by the defendant officers, the severe pain caused by the taser, and the puncture wounds caused by the taser are more than "de minimis" injuries. *Id*. (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th

Cir. 1999)). Accordingly, the viability of the officers' qualified immunity defenses draws on whether Martinez's right to be free from such excessive force was clearly established at the time of the incident. *Hope v. Pelzer*, 536 U.S. 730, 736, 739 (2002); *Shelton v. Wise*, 306 F. App'x 60, 62 (5th Cir. 2009).

The answer to this question requires an assessment of whether prior court decisions gave "reasonable warning that the conduct at issue violated constitutional rights." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)). The courts are rightly concerned with whether officers in their position wer on notice that the conduct violated the suspect's constitutional rights; thus, a right is clearly established "despite notable factual distinctions between the precedents relied on and the cases then before the Court." *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008); see also *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012) (holding that the right of an accused to be free from excessive force during an investigatory stop or arrest was clearly established). In this case, the officers violated Martinez's constitutional rights when they dragged him out of the window of his vehicle, struck him repeatedly, tased him, and threw him to the ground because he was not harming anyone, was not resisting, was making no threatening gestures, was compliant with the officers' commands, and made no attempt to evade arrest or detention. In fact, there was no struggle or active resistance by him that would justify the use of any physical force, much less the force utilized by the officers during this stop.

Defendant is correct that the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it", however, "the permissible degree of force depends on the severity of the crime at issue, whether the suspect posed a threat to officer safety, and whether the suspect was resisting arrest or attempting to flee. *Saucier*, 533

U.S. at 208. At the time such force was utilized in violation of Martinez's constitutional rights, the law was clearly established in the Fifth Circuit that repeatedly striking a non-resisting suspect is excessive and unreasonable force. *Anderson v. McCaleb*, 480 F.App'x 768, 773 (5th Cir. 2012); *Bush*, 513 F.3d at 502 (5th Cir. 2008); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000). It was clearly unreasonable for the defendant officers to abruptly escalate an encounter with a compliant suspect who posed no risk of escape into a highly physical takedown under the circumstances.

With respect to the use of a taser on Martinez, it is well established within the Fifth Circuit that an officer acts with excessive forcer when officers tase suspects offering only passive resistance or no resistance at all. *Newman*, 703 F.3d at 762-63; *Ramirez v. Martinez*, 716 F.3d 369, 372, 378 (5th Cir. 2013). While a summary judgment standard is far different from a Rule 12(b)(6) standard, the Fifth Circuit has previously overturned grants of summary judgment in § 1983 cases involving taser use when there were genuine issues of material fact concerning whether a subject was actively resisting arrest. See e.g. *Darden v. City of Fort Worth*, 880 F.3d 698 (5th Cir. 2017). In short, officers are not permitted to tase suspects who – as on the case of Mr. Martinez – are not actively resisting arrest. The officers knew, or should have known, that the tasing of Martinez was both excessive and unlawful.

E.   **The arrest of Martinez was without probable cause**

This Court should deny Defendants' motions to dismiss on Plaintiff's false arrest and malicious prosecution claims because the officers did not have any legal basis to make a custodial arrest of Martinez for the offense of resisting arrest. As stated in the Fifth Circuit's opinion in *United States v. Wadley*, "[p]robable cause requires more than a bare suspicion of wrongdoing." 59 F.3d 510, 512 (5th Cir. 1995). At the time of the wrongful acts of defendants

described in Martinez's complaint, he was not engaged in any criminal activity with the possible exception of a class C misdemeanor speeding violation; certainly not an offense sufficient to justify the officers' unreasonable seizure and assault made under the color of law against him. Martinez was not displaying any behavior to justify being assaulted, tased, and unreasonably arrested by the officers for resisting arrest and there is simply no way that the officers could have reasonably believed that their arrest of Plaintiff was supported by probable cause. Although he may have committed the offense of speeding, that is not the reason that he was arrested. As there is clearly a sufficient claim made by Plaintiff in support of false arrest, the motion to dismiss should be denied. Alternatively, Plaintiff asks for leave to amend his complaint to address any defects the Court observes in his pleadings.

As detailed above, Plaintiff adequately plead his section 1983 claims against both the defendant officers (in their individual capacities) and the City of Corinth. However, if the Court disagrees, Plaintiff respectfully requests leave to amend and address any deficiencies identified by the Court. As the Court knows, leave to amend "shall be freely given when justice so requires" and should be granted absent some justification for refusal. *U.S. ex. rel Willard v. Humana Health Plan of Tex. Inc.,* 336 F.3d 375, 386 (5th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). For example, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Forman*, 371 U.S. at 182. Leave to amend should therefore be given unless some combination of the following factors weighs heavily against amendment: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failures to cure deficiencies by prior amendment; (4) undue prejudice to the opposing party; and (5) the futility of amendment. *See e.g. U.S. ex. rel. Hebert v. Dizney*, 295 F.App'x 717, 724 (5th Cir. 2008). None of these factors are present in this

case, much less do they weight against permitting Plaintiffs to amend at this stage of the litigation. Accordingly, should the Court find that Plaintiff's pleading is deficient in some respect, Plaintiff asks that he be granted leave to amend his pleadings to correct such deficiencies.

## CONCLUSION

For these reasons, Plaintiff prays that this Honorable Court deny each of the defense motions to dismiss (ECF 15, 16, 17, and 18) in their entirety. Alternatively, should this Court determine that Defendant's motion should be granted in some respect, Plaintiff prays that he be granted leave to amend his complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. Plaintiff further requests all such other relief, in law or in equity, to which he may be entitled.

Respectfully submitted,

**Marsala Law Group**

/s/ Jason Lee Van Dyke
Dominick J. Marsala
State Bar No. 24054063
Jason Lee Van Dyke
State Bar No. 24057426
1417 E. McKinney Street, #110
Denton, TX 76209
P – (940) 382-1976
F – (469) 453-3031
C – (940) 305-9242
Email:  marsalalawgroup@gmail.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was electronically filed on the CM/ECF System, which will automatically serve a Notice of Electronic Filing on defense counsel.

/s/ Jason Lee Van Dyke
JASON LEE VAN DYKE